[No. 15376-5-I.   Division Three.   August 27, 1986.]

GERALDINE B. LEWIS, ET AL, *Appellants,* v. DANIEL V. BELL, ET AL, *Respondents.*

*Carl Lopez, Lopez, Fantel & Taylor, Peter D. Francis,* and *Francis & Ackerman,* for appellants.

*Heather H. Reeve, William R. Hickman, Robert C. Dickerson II, Reed, McClure, Moceri, Thonn & Moriarty, Emmet T. Walsh,* and *Walsh & Walsh,* for respondents.

THOMPSON, J.*—Geraldine B. and John L. Lewis appeal a summary judgment dismissing their tort of outrage action against Daniel V. and Nancy Bell. We affirm.

In 1981, Daniel and Nancy Bell placed their son Robert in the custody of Youth Services, which in turn placed Robert in a receiving home run by Geraldine and John Lewis. On the evening of December 2, 1981, Harborview Hospital informed Mr. Bell by telephone that his son Robert had been injured by one of the residents in the Lewis home. According to Mr. Bell's affidavit, after leaving the hospital, he drove Robert back to the receiving home, walked into the basement and made inquiry of the nine children present as to the whereabouts of either Mr. Lewis or the person who hurt Robert. One of the children

---

*This appeal was heard by a panel of Division Three judges sitting in Division One.

slammed and locked the basement door and then Mr. Bell and his son were physically attacked by some of the children. Mr. Bell ran outside the basement and up the stairs to the front door, shouting for someone to call the police. The Bells eventually were able to get into their car and leave, but returned to the home after seeing the police arrive. They declined to press charges against the children or the Lewises.

In her affidavit, Mrs. Lewis relates a different version. She states she was awakened by the sounds of an altercation in her basement. Suddenly, her daughter burst into the bedroom shouting there was a man in the basement fighting with and jumping on the foster children. Mrs. Lewis ran downstairs and saw a man, later identified as Mr. Bell, attempting to enter the basement and scuffling with the children. Mrs. Lewis yelled at the children to get back into the basement and Mr. Bell ran up the steps to the kitchen door and tried to push his way in. Mrs. Lewis stated she believed Mr. Bell was trying to break in to injure her and the foster children, and she was extremely upset, frightened and feared for her life. After calling the police, Mrs. Lewis fainted and fell to the floor, aggravating a preexisting back injury.

In April 1983, Geraldine and John Lewis filed an action based solely on the tort of outrage, seeking damages from Daniel and Nancy Bell. Sixteen months after the suit was filed, the Bells filed a motion for summary judgment and the Lewises sought a continuance to enable them to complete discovery. The Bells' motion was granted and the Lewises' was denied.

The first issue is whether the court erred by summarily dismissing the tort of outrage claim. One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. *Grimsby v. Samson,* 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3d 436 (1975); *Phillips v. Hardwick,* 29 Wn. App. 382, 628 P.2d 506 (1981). To

establish a claim for the tort of outrage, Mrs. Lewis must demonstrate that (1) she suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, and not negligently; (3) the conduct complained of was outrageous and extreme; and (4) she personally was either the object of Mr. Bell's actions or an immediate family member was present at the time of such conduct. *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 669 P.2d 451 (1983).

Additionally, the conduct must be such that a recitation of the facts to an average member of the community would arouse his resentment against Mr. Bell and lead him to exclaim "Outrageous!" *Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 740, 565 P.2d 1173 (1977).

Construing the facts and all reasonable inferences in favor of the nonmoving party, which this court must do when reviewing a summary judgment, the motion should have been granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Turngren v. King Cy.*, 104 Wn.2d 293, 705 P.2d 258 (1985).

█ Here, assuming the events of the evening occurred as described by Mrs. Lewis, Mr. Bell's conduct does not fall within the parameters of that which may be categorized as outrageous. Mr. Bell's conduct in attempting to push his way into the Lewises' home, although possibly tortious and even criminal, if Mrs. Lewis' version is correct, is not "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'*" *Grimsby*, at 59.

The initial screening to determine if conduct is sufficiently extreme and outrageous to result in liability is for the trial court. *Chambers–Castanes v. King Cy., supra.* These facts did not survive this initial screening. The trial court was correct in determining there were no genuine issues as to whether the alleged conduct rose to the extreme degree necessary to support an action for outrage.

The second issue is whether the court erred by refusing

to continue the summary judgment proceeding until the Lewises completed their discovery.

CR 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ CR 56(f) provides a remedy for a party who knows of the existence of a material witness and shows good reason why he cannot obtain the affidavit of the witness in time for the summary judgment proceeding. *Cofer v. County of Pierce,* 8 Wn. App. 258, 505 P.2d 476 (1973). When a trial court has been shown a good reason why an affidavit of a material witness cannot be obtained in time for a summary judgment proceeding, the court has a duty to accord the parties a reasonable opportunity to make the record complete before ruling on a motion for summary judgment. *Cofer v. County of Pierce, supra.*

Here, the Lewises by affidavit stated:

> Refusal of the Court to allow additional discovery prior to hearing Defendant's Motion for Summary Judgment was manifestly unjust to Plaintiffs, since the depositions of Nancy V. Bell and Robert Bell would, more than likely, have exposed evidence helpful to Plaintiff's case.

No explanation was given as to why Nancy and Robert Bell had not been deposed during the 16 months the action was pending. The Lewises failed to even speculate as to what evidence they hoped to establish through the depositions or what genuine issues of material fact would be developed. In view of this, it cannot be said denial of the request for a continuance was a manifest abuse of discretion. *See Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970).

The final issue is whether it was error to summarily dismiss the Lewises' action since there were genuine issues of material fact as to whether an assault had occurred. In an

appellate review of a summary judgment entered pursuant to CR 56, this court can review only those matters that have been presented to the trial court for its consideration before entry of the summary judgment. *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 370 P.2d 867 (1962); RAP 2.5(a). The only cause of action pleaded in the Lewises' complaint was based on the tort of outrage. Further, all affidavits and memoranda submitted to the trial court addressed issues involving the tort of outrage and not assault.

■ Under our liberal rules of procedure, pleadings are primarily intended to give notice to the court and the opponent of the general nature of the claim asserted. *Lightner v. Balow,* 59 Wn.2d 856, 370 P.2d 982 (1962). Although inexpert pleading has been allowed under the civil rule, insufficient pleading has not. A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests. *Williams v. Western Sur. Co.,* 6 Wn. App. 300, 492 P.2d 596 (1972). Because the Lewises based their claim for relief solely on the tort of outrage, it cannot be said that the court or the Bells were put on notice that relief was being sought for an alleged tortious assault. Thus, this issue cannot be raised for the first time on appeal.

Affirmed.

GREEN, C.J., and MUNSON, J., concur.