

2014 SEP 29 AM 11: 05

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BOUCHRA AGOUR, | ) | |
| | ) | No. 70206-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| IAN M. DALRYMPLE and JANE DOE | ) | |
| DALRYMPLE, husband and wife, and the | ) | |
| marital community comprised thereof, | ) | |
| | ) | |
| Respondents. | ) | FILED: September 29, 2014 |
| | ) | |

APPELWICK, J. — Agour appeals a summary judgment dismissing her personal injury suit against Dalrymple for insufficient service of process. She contends the superior court abused its discretion in denying her motions to continue the summary judgment hearing and to consolidate that lawsuit with a second, identical suit she filed against Dalrymple. She also contends the court erred in granting summary judgment. The court was within its discretion in denying Agour's motions, but it erred in granting summary judgment. We reverse and remand for further proceedings.

## FACTS

On October 5, 2009, Bouchra Agour allegedly suffered injuries when her car was struck from behind by a car driven by Ian Dalrymple.

On January 26, 2012, Agour filed the first of two identical lawsuits against Dalrymple.  Process server Michael James made three unsuccessful attempts to serve Dalrymple at his Seattle residence.

According to James, he successfully served Dalrymple on June 7, 2012. His affidavit of service states in pertinent part:

> Mr. Dalrymple can best be described as a 40ish white male, crew cut blonde, light brown hair about 6'0", 180 lbs.  I spoke with his neighbor . . . and confirmed the correct address for Mr. Dalrymple prior to service today.  Upon service Mr. Dalrymple initially denied his identity stating, "He is not home right now", but took the paperwork when I noted this was for his auto accident in October of 2009 and he needed to get in touch with his insurance carrier, State Farm.  He thanked me.

On July 23, 2012, Dalrymple answered the complaint and asserted the affirmative defense of insufficient service of process.

On August 15, 2012, Agour refiled her complaint under a new cause number.  Process server Michael James attempted, but failed, to serve Dalrymple with this second suit multiple times in August and September 2012. On September 10, 2012, copies of the second summons and complaint were left with "Jane Doe" who said she had evicted Dalrymple and had no forwarding information.  Agoura subsequently attempted service of the second suit by publication and with the Secretary of State.

On November 1, 2012, Dalrymple moved for summary judgment in the initial suit, arguing there was insufficient service of process. In a supporting declaration, he alleged in part as follows:

> . . . On June 7, 2012, . . . [n]o adult other than me resided at [my address].

> . . . I am 42 years-old, with dark brown hair, and I weigh around 172 pounds. I do not have a crew cut and did not have a crew cut on June 7, 2012.

> . . . I was not physically handed legal papers in this matter by anyone at any time. Legal papers . . . were left at my residence on June 7, 2012, either under the mat or taped to the door.

> . . . Mr. Winsor III visited me in June of 2012 (I do not recall the exact dates of his visit). Mr. Winsor III is married and lives in New Zealand. Mr. Winsor III appears to be in his 40s, had a crew cut when he visited me, and otherwise appears to be the individual described in the "Affidavit of Service". . . .

> . . . Mr. Winsor III did advise me that someone came by the house with legal papers while I was away, and also told me something to the effect of "I told them that I was not you, but they would not believe me." To my understanding, Mr. Winsor III did not accept the papers, but they were left at my residence anyway.

> . . . Mr. Winsor III was not staying overnight at my residence on June 7, 2012.

Dalrymple also submitted a declaration from Henry Winsor III. Winsor alleged in part:

> . . . On June 7, 2012, I had blonde hair which was trimmed short in a "crew cut" style.

> . . . .

... The process server asked if I was Ian Dalrymple. I told him I was not, and that I was "Henry." The process server said something to the affect of "Well I have a description of Ian Dalrymple and you fit the description." I offered to show him my [identification] but he said that didn't matter. At that point he shoved papers at me and said I had to take them and that I had "been served." I told him that I was not Ian and I would not accept the papers. . . . I closed the door. He said through the door that he was leaving the papers at the door. I said "Fine; I am not responsible for them."

. . . .

. . . I am married and live at [address] Auckland, New Zealand. I am not related to Ian Dalrymple and I did not live at Mr. Dalrymple's house, nor was I resident therein, on June 7, 2012. I did not stay the night at Mr. Dalrymple's residence the night before or after June 7, 2012.

On February 22, 2013, Dalrymple moved for summary judgment in the second lawsuit.

On March 1, 2013, Agour filed a response to the motion for summary judgment in the first suit.

On March 6, 2013, nine days before the first summary judgment hearing and sixteen days before the second, Agour moved to consolidate the two cases and to continue the first summary judgment hearing. Dalrymple opposed the motion, arguing that Agour had known of the first summary judgment motion since November 2012, and that the proper procedure for eliminating redundant lawsuits was dismissal of one suit under CR 41, not consolidation.

On March 14, 2013, the court denied the motion to consolidate. It noted that Agour had sought an expedited decision and had not filed a reply to Dalrymple's response.

On March 15, 2013, the court heard argument on the motions to continue and for summary judgment on the first suit. Dalrymple's counsel pointed out that Agour had four months to conduct discovery and should not receive a continuance. The court agreed, stating that "discovery could have been had at any time but has not been attempted." The court then granted summary judgment, ruling that "the server's objective belief that somebody may be the individual is not what's relevant. What is relevant is did you actually serve the defendant by proper substitute service or by personal service? And there was neither."

On March 18, 2013, the parties entered a stipulated order dismissing Agour's second, identical suit with prejudice.

Agour filed notices of appeal from the dismissal of her first lawsuit and the order denying consolidation. A commissioner of this court ruled that the order dismissing the first suit was appealable as a matter of right and that the appeal would bring up the consolidation ruling for review. There being no need or basis for discretionary review of the order denying consolidation, the Commissioner denied discretionary review and dismissed that appeal.

## DECISION

Agour first contends the court abused its discretion in denying her motions for consolidation and a continuance. There was no abuse of discretion.

We will not disturb a decision denying a continuance absent a manifest abuse of discretion. Lewis v. Bell, 45 Wn. App. 192, 196, 724 P.2d 425 (1986). A court properly denies a continuance where the requesting party does not offer a good reason for the delay in obtaining the desired evidence. Id. at 196. Here, Agour's counsel claimed to have had no opportunity to take the deposition of Henry Winsor in New Zealand. But, as the trial court noted, the motion for summary judgment had been pending for nearly five months "and discovery could have been had at any time but [was not] attempted." The court was within its discretion in denying a continuance.

For similar reasons, the court did not abuse its discretion in denying consolidation. Leader Nat'l Ins. Co. v. Torres, 51 Wn. App. 136, 142, 751 P.2d 1252 (1988), aff'd, 113 Wn.2d 366, 779 P.2d 722 (1989) (decision regarding consolidation will be reversed only upon a showing of abuse of discretion and resulting prejudice). CR 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In this case, the motion to consolidate was filed more than four months after the initial motion for summary judgment, after briefing on the summary judgment motions, and just before the hearings on both motions. And, as Dalrymple correctly points out, the second suit was entirely unnecessary and duplicative since Agour could have simply served Dalrymple again in the first suit. In these circumstances, we cannot say the court abused its discretion.

The remaining issue is whether the court erred in dismissing Agour's first lawsuit on summary judgment. We note initially that when a defendant seeks dismissal for lack of personal jurisdiction, the plaintiff normally bears the initial burden of establishing a prima facie case of sufficient service. Streeter–Dybdahl, 157 Wn. App. 408, 412, 236 P.3d 986 (2010). An affidavit of service, however, "is presumptively correct, and the party challenging the service of process bears the burden of showing by clear and convincing evidence that service was improper." Id.; Leen v. Demopolis, 62 Wn. App. 473, 478, 815 P.2d 269 (1991). The parties in this case did not argue these principles below or on appeal. Nor did the court mention them in its oral and written rulings. Instead, the motion to dismiss was argued and decided under CR 56 and traditional principles of summary judgment.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party bears the initial burden of showing the absence of an

issue of material fact. Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002). If the moving party satisfies that burden, the burden shifts to the nonmoving party to demonstrate an issue of fact. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). On review, we engage in the same inquiry as the trial court and view the facts in a light most favorable to the nonmoving party. Right-Price Recreation, 146 Wn.2d at 381.

A defendant can move for summary judgment in one of two ways. It can submit its version of the facts and allege there are no genuine issues under those facts, or it can elect to simply point out the absence of evidence supporting the plaintiff's case. Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 21, 851 P.2d 689 (1993). By submitting declarations and arguing that they demonstrated the absence of an issue of fact regarding proper service,[1] Dalrymple elected the first method of moving for summary judgment.

In support of his motion, he submitted a personal declaration and the declaration of Henry Winsor III. Dalrymple's declaration described himself as 42 years old, around 172 pounds, with dark brown hair. He alleged he "did not have a crew cut on June 7, 2012." He denied receiving service and alleged that the

---

[1] He argued that the there was no issue of fact as to whether a summons was served by delivering a copy "to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein." RCW 4.28.080(15).

person James attempted to serve was his friend, Henry Winsor III. He stated that "Mr. Winsor III appears to be in his 40s, had a crew cut when he visited me, and otherwise appears to be the individual described in the 'Affidavit of Service.'"

Winsor's declaration stated that he was the person James attempted to serve. He alleged he had blonde hair and a crew cut on the service date. He did not, however, address the other physical characteristics of the person described in James' affidavit of service. He claimed he told James his name and offered to show him identification. He also claimed that the service papers were simply left on the porch and that he was visiting, but not residing with, Dalrymple on the service date. Based on these declarations, Dalrymple argued that he was entitled to summary judgment because James's description of the hair of the person he served did not match Dalrymple's self-description but *did* match Winsor's.

In response, Agour noted that (a) James' description of the person he served matched Dalrymple's self-description in nearly every respect, (b) Dalrymple presented no evidence distinguishing himself from James' description of a six foot white male, (c) Winsor is a New Zealand resident and the person James served spoke with an American accent, (d) the accent James heard was similar to the one he heard when he spoke to Dalrymple by phone prior to the service date, and (e) James denied Winsor's version of the statements made during the attempted service, as well as Winsor's and Dalrymple's claim that the

summons was left on the porch. Agour requested an evidentiary hearing to resolve issues of fact and credibility.

Viewing the evidence in a light most favorable to Agour, we conclude Dalrymple did not carry his burden of showing the absence of a genuine issue of fact. In fact, Dalrymple's submissions did just the opposite. His own declaration demonstrated that he either matched, or did not dispute his resemblance to, every physical characteristic of the person James described in his affidavit except for the person's hair color and style. And, when viewed in a light most favorable to Agour, the differences in the hair descriptions were insufficient to warrant summary judgment. The color difference—light brown versus dark brown—was slight. And, Dalrymple's allegation that he did not have a crew cut on the service date did not rule out that his hair was short and/or worn in a manner similar to a crew cut.

Similarly, while Winsor claimed he had blonde hair and a crew cut on the service date, neither he nor Dalrymple specifically addressed whether Winsor matched the rest of the physical description provided by James. Winsor said nothing about his age, weight, height, skin color, or accent. To the extent Dalrymple addressed those attributes, he did so in extremely vague and conclusory terms, stating that "Mr. Winsor III *appears* to be in his 40's, had a crew cut when he visited me, and otherwise *appears* to be the individual described in the 'Affidavit of Service.'" (Emphasis added.) Such vague

-10-

allegations are insufficient to demonstrate the absence of a material issue of fact. Thus, summary judgment was error.

In addition, despite being denominated as a motion for summary judgment, the motion was and should have been treated as a motion to dismiss. As noted above, an affidavit of service is presumptively correct and the defendant must demonstrate insufficient service by clear and convincing evidence. Streeter-Dybdahl, 157 Wn. App. at 412. Dalrymple's and Wilson's declarations were plainly insufficient to meet this standard.

In sum, the court erred in granting summary judgment. The continuance and consolidation rulings are affirmed. The summary judgment is reversed without prejudice to further proceedings concerning the sufficiency of service.

WE CONCUR: