**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF HEALTH, | No. 59999-6-II |
| Respondent, | |
| v. | |
| NELS RASMUSSEN and HEALING MINISTRY FOR ANIMALS, | UNPUBLISHED OPINION |
| Appellants. | |

VELJACIC, J. — Nels Rasmussen and his organization, Healing Ministry for Animals, appeal the trial court's order granting a permanent injunction preventing Rasmussen from practicing veterinary medicine. Rasmussen argues he did not violate the agreed order entered into by himself and the Washington State Department of Health (DOH) because he performed services only to members of a private membership association and not to the general public. Because Rasmussen cannot show that performing veterinary services to members of a private organization shielded him from disciplinary action enjoining the unlicensed practice of veterinary medicine, we affirm.

FACTS

I.      BACKGROUND

In 2021, pursuant to proceedings arising from his unlicensed practice of veterinary medicine, Rasmussen and DOH entered an agreed order for Rasmussen to permanently cease and

desist "from engaging in any and all conduct constituting the practice of veterinary medicine in the state of Washington" unless he obtained appropriate credentials or met an exception. Clerk's Papers (CP) at 12-13. The agreed order contained stipulated findings of fact including that Rasmussen never possessed credentials allowing him to practice veterinary medicine in Washington and that he advertised providing "animal healing services" and "healing package[s]." CP at 11-12. The findings also included the fact that Rasmussen "treated a horse for a medical condition" and received compensation for it. CP at 11.

The order concluded that Rasmussen engaged in unlicensed veterinary practice in violation of RCW 18.92.010, .051, and .070. Rasmussen signed the order, which stated he "read, underst[ood] and agree[d]" to the order. CP at 13.

II.    INVESTIGATION AND COMPLAINT

After entry of this order, DOH conducted further investigation of Rasmussen. Mathias K.R. Krause, a DOH investigator, attested that he participated in a 27-minute phone call with Rasmussen during which Rasmussen discussed treatment options for a dog named "Coco." CP at 17-18. After watching a video of Coco, Rasmussen determined that "something physically in the spine was causing fear and hesitation in Coco's ability to have enough power or control to go up the stairs." CP at 18. Rasmussen agreed to conduct treatment sessions via Skype in which Rasmussen would "would guide [Krause] in touching Coco's touch points that contain sensory information while [Rasmussen] would perform remote energy work." CP at 18. Krause stated that "[p]rivate membership was required prior to any treatment" and fees included $10 for the private association fee, $300 for a single session, $350 for two sessions, and $700 for four sessions. CP at 18.

In addition, DOH also found that the Facebook page for Healing Ministry for Animals was still operational and contained a link to the website for Healing Ministry for Animals. The website contained a YouTube video depicting Rasmussen conducting "'energy work' on a dog." CP at 78-79.

In July 2023, based on its investigation, DOH alleged Rasmussen violated the agreed cease and desist order. DOH filed a complaint for declaratory and injunctive relief seeking to permanently enjoin Rasmussen from engaging in the practice of veterinary medicine. In January 2024, DOH filed a motion for injunction.

Rasmussen responded to the complaint arguing, in part, that he did not violate the agreed order because he was only offering services to members of his private membership association.

The trial court found there were no disputed issues of fact[1] and concluded that, as a matter of law, Rasmussen violated the agreed order. The court permanently enjoined Rasmussen and the Healing Ministry for Animals from "public and private conduct meeting the definition of veterinary medicine consistent with RCW 18.92.010." CP at 122.

Rasmussen appeals.

## ANALYSIS

### I. PERMANENT INJUNCTION

Rasmussen argues the trial court erred in granting a permanent injunction because he did not violate the agreed order when he formed a private membership association and only offered services to its members. We disagree.

---

[1] At the hearing on the motion for the permanent injunction, Rasmussen agreed that he was "not contesting any of the documents . . . submitted by the State with regard to th[e] motion [for permanent injunction]." Rep. of Proc. at 11.

A.    Legal Principles

"Granting an injunction is addressed to the sound discretion of the trial court." *Gebbie v. Olson*, 65 Wn. App. 533, 538, 828 P.2d 1170 (1992). A decision to grant an injunction "will be disturbed on appeal only if it is based on untenable grounds, is manifestly unreasonable, or is arbitrary." *Id.* "A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard, or if the facts do not meet the requirements of the correct standard." *Bauman v. Turpen*, 139 Wn. App. 78, 93, 160 P.3d 1050 (2007).

RCW 18.92.010(1) provides that:

> Any person shall be regarded as practicing veterinary medicine . . . who shall, within this state, (1) by advertisement, or by any notice, sign, or other indication, or by a statement written, printed or oral, in public or private . . . represent, claim, announce, make known or pretend his or her ability or willingness to diagnose or prognose or treat diseases, deformities, defects, wounds, or injuries of animals; (2) or who shall so advertise, make known, represent or claim his or her ability and willingness to prescribe or administer any . . . treatment, method or practice, . . . for cure, amelioration, correction or reduction or modification of any animal disease, deformity, defect, wound or injury, for hire, fee, compensation, or reward.

The attorney general may bring an action to "to enjoin any person practicing a profession or business for which a license is required by the chapters specified in RCW 18.130.040 without a license from engaging in such practice or operating such business until the required license is secured." RCW 18.130.190(6).[2] Practicing veterinary medicine is one of the professions specified under RCW 18.130.040 that requires such a license. *See* RCW 18.130.040(2)(b)(xiv). And RCW

---

[2] RCW 43.70.190 sets forth the authority of the secretary of health to bring an action to enjoin "a violation or the threatened violation of any of the provisions of the public health laws of this state or any rules or regulation made by the state board of health or the department of health pursuant to said laws."

18.92.051 provides that "[i]t is a violation of RCW 18.130.190 for any person to practice the profession of veterinary medicine . . . who has not complied with the provisions of this chapter."

B.     Analysis

Here, Rasmussen signed an agreed cease and desist order with stipulated findings of fact and conclusions of law. These findings included that Rasmussen advertised healing services, received compensation for treating a horse, and never possessed credentials allowing him to practice veterinary medicine in Washington. After entry of this order, based on its investigation, DOH presented evidence to the trial court that Rasmussen continued to advertise healing services and provided treatment options for Coco the dog. Rasmussen does not contest these facts. Rather, he argues that because he provided services and advertisements to members of a private membership organization, he did not violate the order.

Rasmussen cites numerous federal cases in an apparent attempt to show that his constitutional rights are being infringed. Rasmussen, however, provides no analysis relating the bare citations to federal cases to violation of his rights in the underlying regulatory enforcement action. He also fails to cite any authority supporting the proposition that creating an association immunizes him from the regulation of his illegal practice of veterinary medicine. As the Washington Supreme Court has explained, however, "'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *In re Pers. Restraint of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988)). "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Additionally, Rasmussen's argument that providing veterinary services to members of a private membership organization shields him from disciplinary action under RCW 18.130.190(6) is baseless. Under RCW 18.130.190(6), DOH and the trial court have the authority and jurisdiction to regulate the practice of veterinary medicine. RCW 18.92.010(1) even defines "veterinary practice" *to include services performed* "*in public or private.*" (emphasis added.) RCW 18.130.040 requires that those practicing veterinary medicine possess a license to do so. And RCW 18.92.051 specifies that it is a violation of RCW 18.130.190 for someone to practice veterinary medicine without complying with the provisions of chapter 18.92 RCW.

Given the uncontested facts and the applicable legal standard, we conclude that the trial court did not abuse its discretion in granting the permanent injunction.

CONCLUSION

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Cruser, C.J.